945 F.2d 417
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Dennis B. UMSHLER, Petitioner,
v.
DEPARTMENT OF the INTERIOR, Respondent.
 Nos. 90-3517, 91-3028.
 United States Court of Appeals, Federal Circuit.
 Sept. 19, 1991.
 
 Before PAULINE NEWMAN, Circuit Judge, SKELTON, Senior Circuit Judge, and LOURIE, Circuit Judge.
 DECISION
 SKELTON, Senior Circuit Judge.
 
 
 1
 Dennis B. Umshler (petitioner) appeals from the August 9, 1990, decision of the Merit Systems Protection Board (the board), Docket No. DE07528910284-1 (our case no. 91-3028), dismissing without prejudice his appeal from the action of the Department of the Interior (the agency) in removing him from his position of Supervisory Geologist GM-13, and from the March 28, 1990, decision of the board, Docket No. DE34439010201 (our case no. 90-3517), dismissing for lack of jurisdiction his appeal from the action of the agency in failing to select him for one of two vacant positions in the district office of the agency in Albuquerque, New Mexico. The two cases have been consolidated in this appeal. We affirm the board's decision of March 28, 1990, in case no. 90-3517, and modify its decision of August 9, 1990, in case no. 91-3028, and remand the case for further proceedings.
 
 OPINION
 
 2
 The facts in case no. 91-3028 show that petitioner was reassigned from his position of Chief, Branch of Solid Minerals, GM-13, Albuquerque District, Division of Mineral Resources, Albuquerque, New Mexico, to the position of Chief, Branch of Mineral Resources, Albuquerque District, Farmington Resources Area, Farmington, New Mexico, effective April 9, 1989, with the same grade and pay. This reassignment was caused by a reorganization of the District Office in Albuquerque which affected 50 people and which abolished petitioner's office as well as the office of another GM-13 employee. Another reason for the transfer, according to the agency, was that there was a vacancy in the Farmington office which petitioner was well qualified to fill. The petitioner refused to accept the reassignment, giving as his reasons the facts that his home was in Albuquerque, and his wife, a GS-13 employee, worked there for the government, and a transfer to Farmington would require him to travel two or three hours each way every day. When petitioner declined to accept the transfer to Farmington, the agency removed him from his office because of his failure to accept the directed reassignment. The petitioner appealed his removal to the board.
 
 
 3
 The board assigned petitioner's appeal to an administrative judge, who conducted a trial. At the trial, petitioner asserted a number of defenses to his removal, including the following. He alleged that his supervisor was better qualified to fill the Farmington position than he was; that the agency reassigned him to force him to resign because it knew petitioner would not accept the reassignment because of his wife's employment in Albuquerque; that the agency should have declared a reduction in force (RIF), and did not do so solely to deprive petitioner and others of retention rights; that his reassignment was a reprisal against him for previously appealing his performance rating and for his objecting to a proposed State Wilderness Plan, which were legally protected acts; that the agency discriminated against him because of his male sex and that there was overt discrimination in the form of disparate treatment and disparate impact; and that the agency failed to consider the fact that he had an ulcer and that this was handicap discrimination. The AJ held that petitioner had failed to prove these claims and defenses by a preponderance of the evidence.
 
 
 4
 Finally, petitioner alleged that the agency has a "pattern or practice" of reassigning an unwanted employee to a location where the agency knows the employee would not go in order to cause the employee to resign and that this practice was used in reassigning the petitioner to force him to resign. He offered to prove this practice by two witnesses, Mike Reitz and Richard Niemeyer, both of whom were former employees who had been reassigned by the agency. The AJ refused to allow Reitz to testify on the ground that his testimony was not relevant. He denied petitioner's request for Mr. Niemeyer to testify because he had been reassigned more than three years before the present case and it was unlikely that he had any knowledge of the agency's current practices. Petitioner offered an affidavit of Niemeyer which was filed in the record as a part of petitioner's objection to the agency's rebuttal evidence.
 
 
 5
 The AJ found that the agency had a legitimate management reason for petitioner's reassignment without using RIF procedures, and that it promoted the efficiency of the service. He affirmed the agency's action.
 
 
 6
 The petitioner then appealed to the full board. Upon review, the board held on April 16, 1990, that it was error for the AJ to refuse to let witnesses Reitz and Niemeyer testify. It held further that the AJ had not made sufficient findings on all material issues of fact and law, and had not summarized the evidence, resolved issues of credibility, stated her conclusions of law, legal reasoning and the authorities on which that reasoning rests. The board remanded the case to the AJ with instructions to reconvene the hearing to accept the testimony of Mr. Reitz and, if necessary, that of Mr. Niemeyer, and to issue a new initial decision which includes findings on all material issues raised by petitioner, and a finding as to whether petitioner had rebutted the agency's prima facie case.
 
 
 7
 Upon remand, the AJ set the case for a hearing on July 10, 1990, and the petitioner appeared and informed the AJ that Mr. Reitz had taken a boat to Alaska and might not return for a year. He stated further that he would be prejudiced without the testimony of both Reitz and Niemeyer. Acting for the board, the AJ then dismissed the appeal without prejudice on August 9, 1990, to allow petitioner to find and present both witnesses. The AJ ordered petitioner to file a request to reinstate the appeal, together with a request for a hearing, not later than 30 days from the date Mr. Reitz becomes available as a witness and/or not later than June 30, 1991. He ordered the parties to preserve the testimony of Mr. Niemeyer in the event he is unavailable upon the refiling of the appeal.
 
 
 8
 Petitioner filed an appeal to this court on October 15, 1990, without having filed with the AJ a request to reinstate the appeal or a request for a hearing.
 
 
 9
 During oral argument of the appeal before us, in response to questions from the bench, petitioner's attorney stated that Mr. Reitz was now available to testify, and that she was willing to move before us that the petitioner's appeal to the board be reinstated and that the case be remanded for a new trial to be held by a different AJ. We conclude that the motion for reinstatement of the appeal, remand and a new trial should be granted, but we decline the request to designate the AJ who will conduct the trial, as that is a function of the board.
 
 
 10
 Accordingly, we modify the August 9, 1990, decision of the board by eliminating the dismissal without prejudice provision and the provisions relating to requests for reinstatement of the appeal and for a hearing, and remand the case to the board for a new trial in accordance with the board's remand order of April 16, 1990.
 
 
 11
 Petitioner's claims and defenses are not before us, because they have not been finally adjudicated by the board. Consequently, we do not consider or decide them.
 
 
 12
 In case no. 90-3517 petitioner learned after he had been removed from his job for refusing to accept a reassignment to Farmington, New Mexico, that two GM-13 positions in the Albuquerque office had become vacant. He was qualified to fill both positions and he applied to the agency to be selected for one of them. The agency then voluntarily placed him on a Reemployment Priority List (RPL). An RPL is required by 5 C.F.R. § 330.201 to be established by an agency when it separates eligible employees due to reduction in force (RIF), or compensable injury. Petitioner was placed on this voluntary RPL list even though he had not been separated by a reduction in force or by a compensable injury. He was considered by the agency for both positions but was not selected for either of them. The positions were filled by other persons who were selected in a recruiting process. Petitioner then filed an appeal to the board. The board referred the case to an AJ who issued an order to petitioner to show under which law, rule or regulation the matter was appealable to the board. Petitioner responded by stating that it was appealable to the board under 5 C.F.R. § 300.104(a). The agency then contended that this regulation was not applicable and that the matter was not within the appellate jurisdiction of the board. The board agreed and dismissed the case for lack of jurisdiction. Petitioner then appealed to this court.
 
 
 13
 In his appeal to this court, petitioner says that the board had jurisdiction of his appeal under 5 U.S.C. §§ 2302 and 7701 and under 5 C.F.R. §§ 300.103, 300.104(a), 330.201 and 330.205. We disagree for the following reasons.
 
 
 14
 Section 2302 prohibits certain personnel practices and actions by an agency against its employees. The petitioner was not a government employee at the time the two positions became vacant or at the time he was not selected for them, as he had been removed from his job previously for refusing to accept a reassignment. Consequently, § 2302 was not applicable to petitioner regardless of the action taken by the agency in filling the positions. Furthermore, petitioner does not point to any action of the agency against him that was a prohibited personnel action as defined in § 2302.
 
 
 15
 Section 7701 provides that an employee, or an applicant for employment, may appeal to the board from any action which is appealable to the board under any law, rule or regulation. An appeal may not be made to the board under § 7701 unless the action complained of is appealable under another law, rule or regulation. This means, as applied to this case, that petitioner must prove by a preponderance of the evidence, as an applicant for employment, that the action complained of is appealable to the board under 5 C.F.R. §§ 300.103, or 300.104(a), or 330.201, or 330.205. We now consider these regulations.
 
 
 16
 Section 300.103 provides in pertinent part:
 
 
 17
 § 300.103 Basic requirements.
 
 
 18
 (a) Job analysis. Each employment practice of the Federal Government generally, and of individual agencies, shall be based on a job analysis to identify:
 
 
 19
 (1) The basic duties and responsibilities;
 
 
 20
 (2) The knowledges, skills and abilities required to perform the duties and responsibilites; and
 
 
 21
 (3) The factors that are important in evaluating candidates. The job analysis may cover a single position or group of positions or an occupation or group of occupations, having common characteristics.
 
 
 22
 An examination of this regulation shows that it only provides standards and basic requirements for government employment. It does not contain a grant of jurisdiction for an appeal to the board by an applicant for a job. Therefore, this section is of no help to petitioner.
 
 Section 300.104(a) provides:
 
 23
 § 300.104 Appeals, grievances and complaints.
 
 
 24
 (a) Employment practices. A candidate who believes that an employment practice which was applied to him or her by the Office of Personnel Management violates a basic requirement in § 300.103 is entitled to appeal to the Merit Systems Protection Board under the provisions of its regulations.
 
 
 25
 It is clear that this regulation applies to a program administered by the Office of Personnel Management (OPM). The petitioner has not alleged, and cannot prove under the facts in this case, that OPM had anything to do with his failure to be appointed to one of the vacant positions. Consequently, Section 300.104(a) is not applicable.
 
 
 26
 Sections 300.201 and 330.205 deal with the reemployment of eligible employees who have been separated due to reduction in force or compensable injury. They provide in pertinent part as follows:
 
 
 27
 § 330.201 Establishment and maintenance of RPL.
 
 
 28
 (a) Each agency is required to establish and maintain a reemployment priority list (RPL) for each commuting area in which it separates eligible employees due to reduction in force or compensable injury ...
 
 
 29
 § 330.205 Employment restrictions.
 
 
 30
 (a) When a qualified individual is available on an agency's RPL, the agency may not make a final commitment to an individual not on the RPL to fill a permanent or temporary competitive service position ...
 
 
 31
 The petitioner was not separated due to a reduction in force nor to a compensable injury. Therefore, these sections are not applicable.
 
 
 32
 After a thorough consideration and analysis of these statutes and regulations, we have concluded that petitioner has not proven by a preponderance of the evidence that his claim is within the appellate jurisdiction of the board.
 
 
 33
 The petitioner says that even if he does not have reemployment rights under the above statutes and regulations, he is entitled to those rights under the doctrine of estoppel. He contends that when the agency put him on its voluntary RPL it led him to believe that he would be treated as if he had been displaced by a RIF and that he relied on the actions of the agency to his detriment. He says that under these circumstances the government should be estopped from denying him an appointment to one of the vacant positions.
 
 
 34
 It is doubtful whether estoppel can ever be applied against the government. See O.P.M. v. Richmond, 496 U.S. ----, 110 S.Ct. 2465, and 110 L.Ed.2d 387 (1990), where the Supreme Court stated "We have reversed every finding of estoppel [against the government] that we have reviewed." See also Chula Vista City School District v. Bennett, 824 F.2d 1573, cert. denied, 484 U.S. 1042 (Fed.Cir.1987). We agree with the statement in the agency's brief that petitioner has not established that "(1) any misrepresentation concerning his reemployment was ever made to him; (2) that the government intended any representation concerning his reemployment to induce Mr. Umshler to do anything; (3) that Mr. Umshler was not aware of the true facts concerning his reemployment; and (4) that he reasonably relied upon any government conduct to his detriment." It is our view that petitioner has not shown that he is in any worse position than he would have been in had the agency not put him on its voluntary RPL. Without such a showing, estoppel will not be applied. We conclude that the government is not estopped from denying petitioner an appointment to one of the vacant positions.
 
 
 35
 The decision of the board dismissing petitioner's appeal for lack of jurisdiction is affirmed.
 
 COSTS
 
 36
 Each party shall bear its own costs.